574 A.2d 1208

**Barbara MUEHLIEB, Appellant,**

**v.**

**CITY OF PHILADELPHIA, Appellee.**

Commonwealth Court of Pennsylvania.

Argued March 5, 1990.

Decided May 14, 1990.

134

Charles J. Daly, McKissock & Hoffman, P.C., Philadelphia, for appellant.

Amy Norr, Asst. City Sol., with her, Andrew P. Bralow, Chief Deputy City Sol., and Seymour Kurland, City Sol., for appellee.

Before DOYLE and SMITH, JJ., and BARRY, Senior Judge.

BARRY, Senior Judge.

This is an appeal from an order of the Court of Common Pleas of Philadelphia County which restricted appellant, Barbara Muehlieb (Muehlieb), to housing a maximum of ten dogs, no more than two of which may be unneutered, on her premises at 341 Sanger Street (subject premises) in the City of Philadelphia. The order, dated December 16, 1988, gave Muehlieb sixty days within which to comply. We affirm.

Muehlieb lives in a single-family dwelling on the subject premises, which is within a residential district. Residing with Muehlieb are at least twenty purebred Siberian Huskies. The Muehlieb home is situated on a corner lot with a rear yard measuring approximately fifty (50) feet by seventy-five (75) feet. The dogs are kept in individual wire crates within a room in the rear of the Muehlieb home. This room has a door leading to the rear yard. Within the yard there are three separate pens and the dogs are placed in the pens whenever Muehlieb cleans the crates or when the dogs are let outside for exercise or to relieve themselves. Muehlieb testified that she cleans the rear yard and pens approximately three to four times per day. This involves not only picking up feces, but also scrubbing and deodorizing the rear yard and pens with bleach and commercial products used to eliminate odor.

Since 1986, Muehlieb has held a Private Kennel Class I license which was issued by the State Department of Agriculture (Department) pursuant to the Dog Law,[1] 3 P.S. §§ 459–101–460–1205. A Private Kennel Class I license is issued upon application for the purpose of operating "a kennel for a cumulative total of 50 dogs or less of any age

[1]. Sections 101–1205 of the Act of December 7, 1982, P.L. 784.

during a calendar year for any nonresearch related purpose". Section 206(a) of the Dog Law, 3 P.S. § 459–206(a). A licensed kennel is subject to periodic inspection and Department personnel inspected the subject premises on one occasion in each of the years 1986, 1987 and 1988. On each of those occasions the Department personnel found the subject premises to be in satisfactory condition.

The City of Philadelphia (City) filed this equity action in September of 1988 seeking to restrain Muehlieb from maintaining her premises in violation of the health, housing and zoning provisions of the Philadelphia Code. The City averred that the conditions of Muehlieb's home constituted a public nuisance in that Muehlieb's operation unreasonably interfered with the rights of her neighbors and the local community. Further, the City contended that Muehlieb was operating a business in violation of the zoning provisions contained in the Philadelphia Code. In addition, the City claimed that Muehlieb was in violation of § 10–103(8) of the Philadelphia Code (Animal Control Law), which limits to twelve the number of dogs that one may keep in a residential dwelling.

In this equity action the City's inspector from the Department of Licenses and Inspections testified that while at the subject premises, he observed huge holes, filled with green, stagnant water that smelled strongly of urine and he described an intolerable stench in the area. Muehlieb's neighbor, Michael Shamp (Shamp), testified to the howling and stench of the dogs. Indeed, Shamp offered a cassette tape of Muehlieb's howling dogs which Shamp recorded from his home at 5:30 a.m. Shamp acknowledged that he had observed Muehlieb cleaning up after the dogs, but it was Shamp's testimony that the clean up effort was insufficient. Four other neighbors also testified. Muehlieb stipulated that the testimony of these individuals would have been cumulative to that of Shamp. Included among these four neighbors was the pastor of a nearby church who had halted church services in the middle because of the barking of Muehlieb's dogs.

After hearing the evidence, the trial court found that Muehlieb's operation constituted a public nuisance and that Muehlieb was operating a business from her residence. The trial court further found that the Dog Law does not preempt the City's Animal Control Law. Specifically, the trial court found that the City's Animal Control Law complemented, rather than conflicted with, the Dog Law. Based on these findings and conclusions, the trial court entered the above-described order. This appeal followed.

■ Muehlieb raises numerous issues [2] for our consideration. Muehlieb argues that: (1) the Dog Law preempts the City's Animal Control Law; (2) the trial court erroneously found that Muehlieb's operation constituted a public nuisance so as to give the City power to abate the nuisance; and (3) the trial court erred in admitting hearsay evidence concerning a petition allegedly signed by Muehlieb's neighbors. Each of Muehlieb's contentions is without merit.

■ Muehlieb's first argument is founded upon the judicially created doctrine of preemption, which holds that a local power may not act in areas of the law which are intended to be governed by state statute. *See, e.g., City of Pittsburgh v. Allegheny Valley Bank,* 488 Pa. 544, 412 A.2d 1366 (1980). Muehlieb claims that since the Dog Law permits her to house up to fifty animals on the subject premises, the City's Animal Control Law may not set a limit which is less than fifty. Accordingly, because the City's Animal Control Law sets a limit of twelve dogs, Muehlieb

---

**2.** In her brief to this court, Muehlieb also argues that the City's Animal Control Law is an improper exercise of the City's police powers, that the City's Animal Control Law is an unconstitutional delegation of legislative power and that the City's Animal Control Law is arbitrary, confiscatory and not rationally related to a legitimate exercise of the City's police powers. Our review of the record fails to reveal where in the proceedings below Muehlieb raised these issues. Moreover, Muehlieb has not specified in her brief where these issues were raised and preserved in the trial court as required by Pa. R.A.P. 2117(c). Accordingly, because these issues were not raised in the trial court, these issues are waived. *See, e.g., Tagnani v. Lew,* 493 Pa. 371, 426 A.2d 595 (1981); *Commonwealth v. National Federation of the Blind,* 471 Pa. 529, 370 A.2d 732 (1977).

contends that the City improperly prohibits that which the Commonwealth allows. We disagree.

> Preemption analysis calls for the answer initially to whether the field or subject matter in which the ordinance operates, including its effects, is the same as that in which the state has acted. If not, then preemption is clearly inapplicable. An affirmative answer calls for a further search for it is not enough that the legislature has legislated upon the subject. The ultimate question is whether, upon a survey of all the interests involved in the subject, it can be said with confidence that the legislature intended to immobilize the municipalities from dealing with local aspects otherwise within their power to act.

*Duff v. Township of Northampton,* 110 Pa. Commonwealth Ct. 277, 287–88, 532 A.2d 500, 504 (1987), *aff'd,* 520 Pa. 79, 550 A.2d 1319 (1988).

Previously we addressed the issue of whether local legislation regarding the licensing and regulation of dogs was preempted by the Dog Law of 1965 [3]. In *Baehr v. Lower Merion Township,* 51 Pa. Commonwealth Ct. 241, 414 A.2d 415 (1980), we affirmed the summary conviction of an individual for violating the municipality's ordinance regulating dogs running at large. In the face of a challenge that the Dog Law of 1965 preempted such an ordinance, we stated that the ordinance was a valid exercise of the municipality's police power and we found that the Dog Law of 1965 evidenced "no legislative intention to preclude local regulation of dogs running at large.... The field of regulation at issue not only permits variation in local provisions but, we think, encourages regulation adapted to local conditions". *Baehr,* 51 Pa. Commonwealth Ct. at 243–44, 414 A.2d at 416.

Muehlieb argues that the holding of *Baehr* is inapplicable to the present action for two reasons. First, Muehlieb points out that *Baehr* interpreted the Dog Law of 1965.

3. Sections 101–1207 of the Act of December 22, 1965, P.L. 1124, *as amended, formerly,* 3 P.S. §§ 460–101–460–1207, repealed by Section 1205(a) of the Act of December 7, 1982, P.L. 784.

Muehlieb contends that the current Dog Law is more comprehensive and evidences an intent by the legislature to preempt local legislation. We disagree. Having reviewed the Dog Law of 1965, we fail to see how the current Dog Law substantially differs from its predecessor so as to compel a result different than that reached in *Baehr*.

Muehlieb contends in the alternative that our decision in *Duff* impliedly overruled *Baehr*. Again, we are unable to agree with Muehlieb's argument. In *Duff*, this court found that local legislation regarding hunting was preempted by The Game Law[4]. In reaching this conclusion, we stated that the purpose of The Game Law was to:

> [C]reate comprehensive and uniform regulation of hunting throughout the Commonwealth. The legislation [did] not suggest that it intended to regulate the area of hunting through a patchwork of municipal regulations. The problem of hunting wild game with weapons must be uniform and comprehensive, else chaos, confusion and danger to the public would result.

*Duff*, 110 Pa. Commonwealth Ct. at 292–93, 532 A.2d at 507.

In the present case, Muehlieb would have us interpret the Dog Law so as to grant to Muehlieb the unfettered right to house up to fifty dogs in her home without regard to the City's legitimate interest in protecting the health, safety and welfare of its residents. We find no intention by the legislature to make the Dog Law so pervasive and comprehensive as to preclude the City from exercising its police powers to limit the number of dogs which may be housed in a residential setting within the City.[5] Indeed, we doubt that the legislature was even considering the police powers of a municipality to regulate dogs when the legislature enacted

---

**4.** Act of June 3, 1937, P.L. 1225, *as amended*, 34 P.S. §§ 1311.1–1311.-1502, repealed by the Act of July 8, 1986, P.L. 442, substantially reenacted in the Game and Wildlife Code, 34 Pa.C.S. §§ 101–2965.

**5.** That the legislature did not intend to preempt local action in this area can be gleaned from the fact that county and city treasurers play an important roll in the collection of fees and in record keeping under the Dog Law. *See, e.g.,* Section 216 of the Dog Law, 3 P.S. § 459–216. We believe this evidences an intent by the legislature to permit, rather than preempt, local action in the area of dog regulation.

the Dog Law. The focus of the Dog Law is on the protection of dogs; the emphasis of the City's Animal Control Law is the protection of the health, safety and welfare of the citizens of Philadelphia. Consequently, the interests sought to be protected by the City's Animal Control Law are not the same as those protected by the Dog Law. We believe preemption is inapplicable. For the foregoing reasons, Muehlieb's argument that the trial court erred with regard to the preemption issue is without merit.

█ Muehlieb also argues that the trial court erred in finding that Muehlieb's operation was a public nuisance. Muehlieb claims that the only nuisance proven, if any, was a *private* nuisance. Consequently, the *City* lacked standing to bring an equity action to abate the nuisance. Without addressing whether the City would have standing to abate a private nuisance, we agree with the trial court's determination that Muehlieb's operation is a public nuisance.

(1) A public nuisance is an unreasonable interference with a right common to the general public.

(2) *Circumstances that may sustain a holding that an interference with a public right is unreasonable* include the following:

(a) Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience;

(b) *whether the conduct is proscribed by* a statute, *ordinance* or administrative regulation, or

(c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

*Restatement (Second) of Torts* § 821B. As previously stated, enactment of the Animal Control Law was a proper exercise of the City's police power. That ordinance prohibits more than twelve dogs from being housed within a residential district and it is undisputed that, at the time of trial, Muehlieb had twenty dogs on the subject premises. Moreover, the evidence establishes that this conduct unrea-

sonably interfered with the rights of Muehlieb's neighbors and local church parishioners. Pursuant to Section 821B of the *Restatement (Second) of Torts,* the circumstances of this case were such that the City could enjoin Muehlieb's proscribed conduct.[6]

The final issue raised by Muehlieb is that the trial court erred in admitting hearsay testimony concerning a petition allegedly signed by Muehlieb's neighbors complaining about her operation. Although we are inclined to agree that the petition was inadmissible hearsay, we are of the opinion that its admission was harmless error. Separate and apart from the petition, there is ample, proper evidence establishing the foul odor and unreasonable noise emanating from the subject premises. The petition was cumulative to that evidence and was not necessary to the court's conclusion that Muehlieb's operation constituted a public nuisance.

For the foregoing reasons, we affirm the order of the trial court.

## ORDER

NOW, May 14, 1990, the order of the Court of Common Pleas of Philadelphia County, at September Term, 1988, No. 3640, dated December 16, 1988, is affirmed and the appeal of Barbara Muehlieb is dismissed.

---

6. In its opinion, the trial court stated that it believed a six dog limitation was necessary to eliminate the nuisance. The City only requested that Muehlieb be limited to ten dogs. It is for that reason that the trial court set the limitation at ten. The trial court made it clear, however, that if this limitation proves ineffective, the City may, upon proof of a continuing nuisance, have the limitation set at a number less than ten. *Trial Ct.Op.* at 2. In this regard, we note that the court's limitation is more restrictive than the limitation set by the City's Animal Control Law. We believe this was proper. *See, e.g., Bradley v. Township of South Londonderry,* 64 Pa. Commonwealth Ct. 395, 440 A.2d 665 (1982) (A proven nuisance may be enjoined even though the use of the property complies with local ordinances.)